In the matter of Stepen, a Mulatto Man and Slave.

The facts of this case may be learned from the following decision :

*Riker,* Recorder.—The party is brought up on a *habeas corpus,* and by the return thereto by the Keeper of the City Prison, it appears that he has been committed as

The return of habeas corpus that J. S. is held as a

a runaway slave. It is alleged that he is the slave of one Isaac Minus, in Savannah, in the State of Georgia. By the 4th art. of the Constitution of the United States, § 2, 1 vol. Rev. Laws, p. 22, provision is made, that if a person held to service or labor in one State, escape into another, he shall be delivered up, on claim of the party to whom such service or labor may be due.

slave is not conclusive, an inquiry may be made into the fact upon the return whether he is a slave or not.

By the 6th art. the Constitution and the laws of the United States, which shall be made in pursuance thereof, is declared to be the Supreme law of the land, and the judges in every State shall be bound thereby, any thing in the Constitution or laws of any State to the contrary notwithstanding.

The same section provides, that the senators and representatives, the members of the several State legislatures, and all executive and judicial officers, both of the United States and of the several States, shall be bound by oath or affirmation to support the Constitution of the United States.

In pursuance of the authority vested in Congress, by the Constitution, they passed a law the 12th of February, 1793, during the presidency of Washington, by which provision is made for the apprehension of persons escaping from the service of their masters. Vide 2 vol. Laws of the United States, p. 166, 167, ch. 7, § 3. It declares, "That when a person held to labor in any of the United "States, or either of the Territories under the laws there- "of, shall escape into any other of the said States or Ter- "ritories, the person to whom such labor or service may "be due, his agent or attorney, is thereby empowered to

" seize or arrest such fugitive from labor, and to take <span>NEW-YORK,</span>
" him or her before any judge of the circuit or district <span>March, 1816.</span>
" Court of the United States, residing or being within the
" State, or before any magistrate of any city, county, or
" town corporate, wherein such seizure or arrest shall be
" made, *and upon proof to the satisfaction of such judge*
" *or magistrate, either by oral testimony or affidavit, taken*
" *before and certified by a magistrate of any such state or*
" *Territory,* that the person so seized or arrested doth,
" under the laws of the State, or Territory, from which
" he or she fled, owe service or labor to the person claim-
" ing him or her, it shall be the duty of such judge or
" magistrate to give a certificate thereof to such claimant,
" his agent, or attorney, which shall be a sufficient war-
" rant for removing the said fugitive from labor to the
" State or Territory from whence he or she fled."

There can be no doubt that every judge in the respec-
tive States is bound by this law. If, therefore, Stephen
who is now before me, be a slave, and the person who has
committed him, be the legal agent or attorney of the
master, the commitment is valid, and I ought not to
discharge him. This principle is not disputed on either
side. But the counsel of Stephen deny the fact of his
being a slave, and insist upon putting it in issue before the
judge. To this, two objections are made..

1. That the fact has been already tried by the commit-
ting magistrate, and cannot now be received.

2. That it is stated by the return to the *Hab. Corpus,*

that he is a slave, and that the truth of the return cannot be disputed.

As both these principles thus contended for, are important, and deeply affect *personal liberty*, I have maturely considered them.

It is a general maxim of law, that a decision by a Court of competent jurisdiction is final and conclusive. This maxim is solid, and should never be disturbed. It is essential to the tranquility of society and the security of property, that there should be an end to litigation. Such decision by Courts of competent authority are called *res Judicata.*

But I am of opinion, that no judgment can be considered as *res Judicata*, and absolutely binding, except where a writ of error or certiorari, or appeal, can be obtained ; unless in special cases, where the decision of a magistrate is made conclusive by a positive statute. Thus we find in the case of Yates *v.* the people, 6 Johns. 430, 341. Ch. Jus. Kent takes the distinction between the final and definitive judgment and decision, which are not final. Thus, says he, an award upon a *Hab. Corpus* is not final. If the Court remand a prisoner, that does not prevent the same Court, or any judge out of Court, to allow another writ, and to bail or discharge, in their discretion.

Lord Chief Justice Eyre ∴ 2 Hen. Blac. 410, says decisions resting *in pais* ar not conclusive.

If the decision of the magistrate be *res Judicata,* it is absolutely binding and conclusive upon Stephen and upon all other persons, until it be reversed in due course of law. Can it be possible that a single magistrate, uncon-

trolled by a jury, can make a decision which adjudges one man to be the slave of another, and that this decision shall be *res Judicata* ? in other words, a decision that shall be final and conclusive upon the parties and all others, until reversed by due course of law.

I am of opinion, that this is not the law ; convenience no doubt, requires, that interlocutory decisions and determinations *in pais*, should not lightly be considered, or opened. Greathead *v.* Bromley, 7 Term, 455 : Vesey, Jr. 610. 612 : 7 Vesey, Jr. 14, 15.

There is another ground which defeats the first objection ; it is this, the certificate of the magistrate does not conform to the act of Congress ; the act requires that the magistrate shall *have proof to his satisfaction* by oral testimony, or affidavit taken before, and certified by a magistrate.

Now it is plain, that if the proof be given orally, it must be reduced to writing. If it be by affidavit, it is already in writing. But in either case it must be upon oath, taken before a magistrate of the place, and certified by him. In the case before us, the fact that Stephen is a slave, is not sworn to by any one. The magistrate certifies, that it is proved to his satisfaction, *by the confession of the said Stephen.* It does not appear that the confession was made to the magistrate : but if it did, it would not avail, because the *fact* of slavery must be testified, that is, sworn to, by some person, and certified by the magistrate.

All summary proceedings are watched with extreme jealousy by the common law ; the slightest error is fatal. Thus, under the vagrant act, it is not sufficient to say the

NEW-YORK, party is charged *upon oath,* but the magistrate must state, March, 1815, that the oath was believed, and that he was thereupon *convicted.* This principle was adopted in Rose *v.* Cooper, 6 Term, 509, and John Baptist Lambert's case, decided by me at Chamberts, 6th July last.

The second objection remains to be considered. Is the return to the *Hab. Corpus* conclusive, or may the facts be traversed? This is a most important question, and essentially affecting the personal security of the citizen. The most distinguished judges in Great Britain have differed upon the subject. The question is not new, I have thought of it before, and have long since made up my opinion upon it.

In 1757 a gentleman was pressed as a seaman. He brought his *Hab. Corpus.* To which a return was made, that he was a seaman, and, consequently, legally detained. He was discharged by the Secretary of War : but an inquiry was set on foot in Parliament. The house of Lords put, among other questions, the following one to the judges, " Whether in all cases whatsoever, the judges are " so bound by the facts set forth in the return to the writ " of *Hab. Corpus* that they cannot discharge the person " brought before them, although it should appear most " manifestly to the judges, by the clearest and most undoubted proof, that such return is false in fact,' and " that the person so brought up is restrained of his liberty " by the most unwarrantable means, and in direct viola- " tion of law and justice."

Mr. Justice Wilmot, Mr. Baron Adams, Mr. Baron Smythe, Mr. Justice Dennison, and Lord Chief Baron Parker, were of opinion that the return was conclusive,

some of them say, that if it be falsified by verdict, in an NEW-YORK, March, 1816. action for a false return, the party may then be discharged by *Hab. Corpus.*

Mr. Justice Noel, Mr. Justice Bathurst, Mr. Baron Legge, Mr. Justice Chive, and Lord Ch. Justice Willes, were of opinion that the return is not conclusive. This important case will be found in a note in the last edition of Bacon. 3d vol. p. 438. 446. Suppose a sane person to be committed as a madman, and so returned upon the *Hab. Corpus.* Is the return conclusive until he can establish by a verdict his sanity, or may the judge relieve him?

Suppose a citizen taken by a file of soldiers, and carried to Governor's Island; he obtains his *Hab. Corpus* but is returned to be a regularly enlisted soldier. Is this conclusive? Must he serve until he can falsify the return in an action at law? Other examples might be put. They are unnecessary. I am of opinion with those judges who held that the return was not *conclusive.* I am of that opinion, because if the return be conclusive, a man might, in the language of the Peers, " be restrained of his liber-" ty by the most unwarrantable means, and in direct vio-" lation of the law and justice." I am also of that opinion, because to hold the return upon the writ of *Hab. Corpus* to be absolutely conclusive upon the judge, is to defeat the object of the *Hab. Corpus* act, and to render nugatory one of the wisest plans which human ingenuity has ever invented to protect personal liberty.

My opinion consequently is, that it is my duty to inquire into the fact whether Stephen be a slave or not, and

NEW-YORK, whether the person who has arrested him be the legal agent March, 1816. of the master for that purpose.

ANTHON, *for the Master.*

BRACKETT, *for Stephen.*

NOTE—In this case the inquiry was gone into, and the person was fully proved to be a slave.